| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL I | | |
| ADRIANA ANZALOTA SANTIAGO<br><br>Demandante - Apelante<br><br>v.<br><br>JAVIER ANTONIO ESTEVEZ DÍAZ, BEER ME HOME, LLC<br><br>Demandando – Apelado | TA2026AP00215 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso núm. BY2025RF01100 (701)<br><br>Sobre:  Liquidación de Comunidad de Bienes, Custodia-Mascotas |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

En el contexto de una acción sobre liquidación de comunidad de bienes entre unos excónyuges, el Tribunal de Primera Instancia ("TPI") desestimó una reclamación contra una compañía de responsabilidad limitada que fue incluida como parte demandada. Según se explica en detalle a continuación, concluimos que actuó correctamente el TPI, pues del récord surge que la demandante no es miembro de la entidad jurídica y esta no es parte indispensable en el caso.

I.

En junio de 2025, la Sa. Adriana Anzalota Santiago (la "Demandante" o la "Exesposa") presentó la acción de referencia, sobre liquidación de comunidad de bienes y custodia de una mascota (la "Demanda"), en contra del Sr. Javier Estévez Díaz (el "Demandado" o el "Exesposo") y de *Beer Me Home, LLC* (la "Corporación" o "BMH").

La Demandante alegó que, a pesar de haberse casado bajo el régimen de separación de bienes, al amparo de unas capitulaciones

matrimoniales, las partes crearon una comunidad de bienes al adquirir propiedades residenciales y comerciales y contraer deudas. En torno a BMH, la Demandante expuso que la empresa se construyó en conjunto, pues ambas partes invirtieron "esfuerzos, ideas, recursos y tiempo ... desde aproximadamente el año 2019"[1], durante la etapa creativa de la marca y las cervezas artesanales, la operación comercial y la posterior apertura de un local comercial. Añadió que administró la operación de BMH hasta la separación de las partes en mayo de 2024.

En octubre, la Demandante instó una *Moción para Enmendar Demanda* acompañada de una *Demanda Enmendada*. En lo pertinente, se añadió una solicitud de *injunction* para que el TPI ordenara la prohibición de enajenar los bienes de BMH. El 23 de octubre, el TPI aceptó la presentación de la *Demanda Enmendada*.

El Demandado contestó la Demanda y reconvino. Negó que entre las partes se hubiese formado una comunidad de bienes. En cuanto a BMH, el Demandado alegó que la colaboración, asistencia administrativa o participación informal de la Demandante en la empresa no fue una aportación de capital, ni generó titularidad, participación societaria o derecho económico alguno sobre la Corporación. Explicó que, según establece el *Operating Agreement* de la Corporación (los "Estatutos Corporativos"), él era el único miembro y dueño con derecho a voto.

A la misma vez, la Corporación incoó una *Moción de Desestimación Parcial al Amparo de la Regla 10.2(5) y Falta de Legitimación Activa* (la "Moción"). Arguyó que las alegaciones en su contra, sobre enriquecimiento sin causa y la solicitud de un interdicto para prohibir la enajenación de bienes corporativos, no justificaban la concesión de un remedio. Además, BMH adujo que

---

[1] Véase, *Demanda*, pág. 2, Entrada 1 de SUMAC.

la Demandante carecía de legitimación activa para instar una reclamación en su contra. En la alternativa, solicitó referir la controversia a arbitraje, de conformidad con lo establecido en los Estatutos Corporativos.

La Demandante se opuso a la Moción; sostuvo que los Estatutos Corporativos estaban plagado de errores y deficiencias, por lo cual debía considerarse como nulo e ineficaz. Destacó que el referido documento contenía errores en el nombre de la Corporación, en la fecha de registro, el nombre de entidad, diferencia en el propósito corporativo, cambio en la dirección de la oficina principal, designación errónea del agente residente, ausencia de la fecha de ejecución, ausencia de identificación de las clases de participación y la omisión de información en cuanto a las aportaciones de capital. Reiteró que BMH fue construida mediante el esfuerzo, ideas, recursos y tiempo de ambas partes. La Demandante enfatizó que administró la empresa hasta que las partes se separaron. En vista de lo anterior, indicó que su reclamación justificaba la concesión de un remedio y, por ende, no procedía la desestimación solicitada por BMH.

Mediante una *Sentencia Parcial* notificada el 23 de enero (la "Sentencia"), el TPI desestimó la reclamación en contra de BMH. El TPI razonó que de las alegaciones no se desprende que la Demandante fuera miembro, oficial o accionista de BMH, o que hubiese adquirido algún derecho propietario sobre la Corporación.

El 6 de febrero, la Demandante solicitó la reconsideración de la Sentencia, lo cual fue denegado por el TPI el 9 de febrero.

En desacuerdo, el 27 de febrero, la Demandante presentó el recurso de apelación que nos ocupa; formula los siguientes señalamientos de error:

> Erró el Honorable Tribunal de Primera Instancia al abusar de su discreción y desestimar una demanda instada en contra de una compañía de responsabilidad

limitada, sin haber hecho determinación de validez de los documentos corporativos fraudulentos presentados por los demandados, y oportunamente impugnados por la demandante, a la luz de la Ley General de Corporaciones de Puerto Rico, según enmendada.

Erró el Honorable Tribunal de Primera Instancia al abusar de su discreción y desestimar una demanda que contiene una propiedad comercial construida mediante el trabajo y el esfuerzo de los excónyuges, sin el requerido procedimiento judicial establecido por nuestro Tribunal Supremo relativo a la doctrina de descorrer el velo corporativo.

Erró el Honorable Tribunal de Primera Instancia al abusar de su discreción y desestimar una demanda resolviendo las dudas creadas por la parte demandada a favor de la misma parte demandada, y sin realizar una determinación de los documentos fraudulentos presentados por dicha parte e impugnados oportunamente por la parte demandante, en violación a la Regla 7.2 y la Regla 10.2(5) de Procedimiento Civil y su jurisprudencia interpretativa.

Oportunamente, la Corporación presentó su alegato. Resolvemos.

II.

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite que una reclamación sea desestimada por, entre otras, dejar de exponer una reclamación que justifique la concesión de un remedio. El tribunal debe ponderar la moción de forma que se tomen "como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas", y deberá interpretarlos conjuntamente, liberalmente y de la forma más favorable para la parte demandante. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428-29 (2008).

El contenido de una demanda debe incluir "una relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tiene derecho a un remedio...". Regla 6.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1. No es necesario entonces, que la parte demandante detalle minuciosamente en sus alegaciones lo ocurrido, sino que demuestre a grandes rasgos los

méritos de su reclamación. *Torres Torres v. Torres Serrano*, 179 DPR 481, 501 (2010).

Asimismo, una moción de desestimación al amparo de la Regla 10.2(5) procederá si el TPI determina que, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es insuficiente para constituir una reclamación válida. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 423 (2012); *Colón v. San Patricio Corp.,* 81 DPR 242, 266 (1959). En otras palabras, el promovente de la moción de desestimación tiene que demostrar que, presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio. *Rosario v. Toyota*, 166 DPR 1, 7 (2005); *Pressure Vessels v. Empire Gas*, 137 DPR 497, 505 (1994).

III.

La Ley Núm. 164 de 16 de diciembre de 2009, según enmendada, conocida como Ley General de Corporaciones (Ley 164-2009), 14 LPRA sec. 3501-4084, constituye el estatuto especial que rige la creación, organización y funcionamiento de las entidades corporativas en Puerto Rico. Véase, *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 85 (2023); *Dorado del Mar v. Weber*, 203 DPR 31, 45 (2019).

Al amparo del aludido estatuto, se reconoce la existencia de distintas formas organizativas, entre ellas, la compañía de responsabilidad limitada ("CRL"), entidad que posee personalidad jurídica propia y separada de las personas que la constituyen, y que se organiza al amparo del Capítulo XIX de la Ley 164-2009. C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, 2016, pág. 569. Estas entidades jurídicas constituyen ficciones legales creadas por el Estado, capaces de realizar aquellas transacciones lícitas autorizadas por ley y de promover cualquier objeto o

propósito legítimo permitido por el ordenamiento jurídico. *Peguero y otros v. Hernández Pellot,* 139 DPR 487, 502 (1995).

El Artículo 19.01(e) de la Ley 164-2009, 14 LPRA sec. 3951(e), define el término "compañía de responsabilidad limitada":

> Significa una compañía de responsabilidad limitada creada por una (1) o más personas bajo las leyes de Puerto Rico, incluyendo sin limitaciones a una "Compañía de Responsabilidad Limitada con Fin Social" o "CRLFS" que satisfaga todos los requisitos según expuestos en el sub-inciso (c) del Artículo 19.06 de esta ley.

En comparación con otros tipos de entidades, la CRL ofrece varias características que la convierten en una alternativa atractiva para la organización de empresas. En particular, algunos de sus elementos distintivos son los siguientes: (1) responsabilidad limitada, característica de la figura de la corporación; (2) posibilidad de tributación a un solo nivel, característica de la figura de la sociedad; y, (3) flexibilidad en la estructuración de su operación interna. Díaz Olivo, *op. cit.*

Esa flexibilidad permite que los miembros diseñen libremente la estructura administrativa y económica de la entidad conforme a sus necesidades. A tales efectos, los asuntos internos y la administración de una CRL se rigen principalmente por el contrato de la compañía de responsabilidad limitada, también conocido como contrato operacional u otro documento similar. Art. 19.01(g) de la Ley 164-2009, 14 LPRA sec. 3951(g). Este contrato constituye el acuerdo básico entre los miembros, y reglamenta los negocios y asuntos de la compañía, así como su estructura administrativa y económica. C. Díaz Olivo, *op cit.*, pág. 573.

De otra parte, destacamos que la Ley 164-2009 distingue entre las distintas figuras que pueden formar parte de una CRL. En particular, el Artículo 19.01(a) define administrador como la persona nombrada o designada como administrador de una compañía de responsabilidad limitada conforme al contrato de

compañía de responsabilidad limitada u otro documento organizativo similar. 14 LPRA sec. 3951(a). Por su parte, el Artículo 19.01(k) define miembro como la persona que ha sido admitida como miembro de una compañía de responsabilidad limitada conforme a lo dispuesto en el Artículo 19.18 del estatuto o, en el caso de compañías de responsabilidad limitada foráneas, conforme a las leyes del estado, país o jurisdicción conforme a la cual dicha entidad se organizó. 14 LPRA sec. 3951(k).

En este contexto, el Artículo 19.18 de la Ley 164-2009 reglamenta el mecanismo mediante el cual una persona puede ser admitida como miembro de una CRL cuando ocurre: (1) la formación de la compañía, o (2) la fecha dispuesta en el contrato de compañía de responsabilidad limitada; o (3), ante la ausencia de una disposición en dicho contrato, cuando los récords de la compañía reflejen la admisión de la persona. 14 LPRA sec. 3968.

En conexión, la condición de miembro en una CRL no necesariamente coincide con la existencia de un interés económico en la entidad. Una persona que no es miembro puede poseer un interés económico en la compañía y, a su vez, una persona puede ser miembro sin haber realizado una aportación inicial de capital, si así lo permite el contrato de compañía de responsabilidad limitada. C. Díaz Olivo, *op. cit.*, págs. 579-580.

Por otro lado, el Artículo 19.12 de la Ley 164-2009 establece que, para la formación de una CRL, una o más personas autorizadas deberán otorgar un certificado de organización, documento que se presenta en el Registro de Corporaciones del Departamento de Estado, de conformidad con los requisitos establecidos por la ley. 14 LPRA sec. 3962.

IV.

Por su parte, la figura de descorrer el velo corporativo existe para, en situaciones excepcionales, obligar a individuos a

responder por una deuda corporativa. Dicha figura se reconoce cuando limitar la responsabilidad de los individuos equivaldría a "sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen". *Casco Sales v. Mun. De Barranquitas,* 172 DPR 825, 832-833 (2007); *Díaz Aponte v. Comunidad San José, Inc.,* 130 DPR 782, 798 (1992); *Sucn. Santaella v. Srio. de Hacienda,* 96 DPR 442, 452 (1968).

Los tribunales descartarán la personalidad jurídica de una corporación, y sujetarán el patrimonio de los accionistas para responder por las deudas y obligaciones de la corporación, en aquellos casos en los cuales:

> La corporación es meramente un "alter ego" o conducto o instrumento económico pasivo ("business conduit") de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los beneficios producidos por la gestión corporativa [y] si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara inequidad o mal ("wrong").

Véase, *D.A.Co. v. Alturas Fl. Dev. Corp. y otros,* 132 DPR 905, 925 (1993).

Generalmente, una persona es considerada un "alter ego" o conducto económico pasivo de otra cuando entre ambas existe tal identidad de interés y propiedad que las personalidades se hallan confundidas, de manera que la corporación no es realmente una persona jurídica independiente. *D.A.Co.,* 132 DPR a la pág. 925; *Fleming v. Toa Alta Develop. Corp.,* 96 DPR 240, 244 (1968); *San Miguel Fertil. Corp. v. P.R. Drydock,* 94 DPR 424, 430 (1967). La aplicación de este principio dependerá de los hechos y las circunstancias específicas del caso particular a la luz de la prueba presentada. *Cruz v. Ramírez,* 75 DPR 947, 954 (1954); véase, además, *D.A.Co. v. Alturas Fl. Dev. Corp. y otros,* 132 DPR a la pág. 926.

El peso de la prueba descansa en la parte que propone la imposición de responsabilidad individual a los accionistas y corresponde al TPI determinar, luego de apreciar la prueba, si procede el levantamiento del velo corporativo. *D.A.Co.*, 132 DPR a la pág. 926; *Flemming*, 96 DPR a la pág. 243; *Cruz*, 75 DPR a la pág. 954. El peso de la prueba no se descarga con la mera alegación de que la empresa es un *alter ego* de una persona, sino con prueba concreta que demuestre que la personalidad de la corporación y la del accionista no se mantuvieron adecuadamente separadas. *D.A.Co.,* 132 DPR a la pág. 927.

En casos de corporaciones en las cuales una persona natural es el único accionista, los tribunales deberán ser cautelosos en el escrutinio de la prueba. Por un lado, el mero hecho de que una persona sea el único accionista de una corporación no autoriza la imposición de responsabilidad individual. *D.A.Co.,* 132 DPR a la pág. 926; *Swiggett v. Swiggett, Inc.,* 55 DPR 76, 83–84 (1939); *Sucn. Pérez v. Gual,* 76 DPR 959, 963 (1954); *Roberto Colón Mach. & Mfg. Co. v. Srio. de Hacienda,* 78 DPR 912, 916 (1956).

Sin embargo, la concentración de control e información en una sola persona puede dar lugar a que estas corporaciones sean fácilmente utilizadas para fines ilegítimos. *D.A.Co.,* 132 DPR a la pág. 926. En atención a este riesgo, los tribunales no deberán reconocer la personalidad jurídica de este tipo de corporación cuando no hay la debida separación entre los asuntos corporativos y los personales, y cuando la corporación no descansa en un fundamento financiero adecuado para lograr los fines para los cuales fue incorporada. *D.A.Co.,* 132 DPR a la pág. 927.

Los tribunales desconocerán la existencia de una corporación debidamente organizada y hará responsables personalmente de las obligaciones corporativas a los accionistas en dos situaciones principales: (1) cuando existe fraude o la ficción corporativa se

desvirtúa y se utiliza como medio de "legalizar" actos ilegales; y (2) cuando la corporación es un mero instrumento, agente o *alter ego* de sus dueños. *Díaz Olivo, op. cit.*, págs. 53–54. Además, se debe establecer que: (1) la corporación se utiliza como un instrumento o *alter ego* de los accionistas; (2) los accionistas cometen ciertos actos concretos de naturaleza fraudulenta o ilegal y (3) existe una relación causal entre la utilización de la corporación como un instrumento o *alter ego* y el fraude o acto ilegal perpetuado.

V.

Examinado detenidamente el expediente del caso de referencia, concluimos que actuó correctamente el TPI al desestimar la reclamación contra la Corporación.

En la medida que la Demandante sugiere que tiene algún tipo de interés propietario en la Corporación, ello no se sustenta por sus propias alegaciones y por los documentos corporativos pertinentes. De lo anterior surge que el Demandado era el único miembro de la Corporación y, más aún, las partes estuvieron casadas bajo el régimen de separación total de bienes.

Según arriba explicado, del Art. 19.18 de la Ley 164-2009, *supra*, se desprende que la condición de miembro de una CRL surge únicamente al ser admitido como tal conforme al mecanismo dispuesto por dicha Ley y por el contrato de la compañía de responsabilidad limitada. Ante el silencio del contrato de la compañía, la propia Ley 164-2009 establece que se puede determinar si una persona es miembro si así consta en los récords de la entidad corporativa.

En este caso, el récord únicamente permite concluir que la Demandante no fue admitida como miembro de BMH. Lo que arguye la Demandante en torno a la multiplicidad de errores en los Estatutos Corporativos no demuestra la existencia de fraude ni

apoya su aparente teoría sobre un interés propietario suyo en cuanto a BMH.

El posible trabajo o aportación laboral de la Demandante hacia el desarrollo de la empresa corporativa no le concede un interés propietario en la Corporación. Asimismo, bajo el esquema estatutario en discusión, el hecho de que la Demandante administrara el negocio no evidencia su condición como miembro de la Corporación.

No obstante, si se demostrara que, en efecto, hubo el referido trabajo o aportación de la Demandante, ello sería pertinente a los fines de que el tribunal, oportunamente, y como parte del proceso de liquidación, le reconozca un crédito.[2] Para ello, la Demandante deberá demostrar que no fue debidamente compensada por su esfuerzo o por alguna aportación económica que realizara. No obstante, la Corporación no es parte indispensable a los fines de que el TPI pueda evaluar lo anterior y, de resultar procedente, le conceda un remedio completo a la Demandante.

VI.

En virtud de los fundamentos que anteceden, se confirma la *Sentencia Parcial* apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[2] Véase Carlos E. Díaz Olivo, et al., *Conflicto Divorcio y Muerte en la Gestión Empresarial*, 92 REV. JUR. UPR 597, 606 (2023).